PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY OF NEW
YORK *vs.* FREDERICK L. CUTTING.

Suffolk. March 7, 10, 1902. — April 15, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, & BARKER, JJ.

*Insurance Commissioner. Insurance, Life,* Valuation of assets of foreign company.

So long at least as the insurance commissioner acts in good faith intending to obey
the law, this court by writ of mandamus cannot compel him to change his con-
clusions either of law or fact in the valuation of the policies or assets of a for-
eign life insurance company.

PETITION, filed July 1, 1901, for a writ of mandamus to be
issued to the insurance commissioner directing him to compute
the reserve liability of the petitioner on all policies issued for
one year with the privilege of renewal as one year term policies
with respect to the first year thereof, and to compute and allow
the assets and liabilities of the petitioner as computed in its
statement filed in the office of the insurance commissioner on or
about February 14, 1901.

The case came on to be heard before *Barker,* J., who reserved
it upon the petition, demurrer, answer, and agreed facts, for the
determination of the full court.

*T. B. Reed* (of New York) *& L. S. Dabney, (R. Foster* with
them,) for the petitioner.

*F. H. Nash,* Assistant Attorney General, for the respondent.

KNOWLTON, J. This is a petition for a writ of mandamus to
compel the insurance commissioner to change his valuation of
the outstanding policies of the petitioner, so as to diminish the
reserve liability for which it must have assets to meet the re-
quirements of our law. The duty of the commissioner to make
this valuation under the R. L. c. 118, § 11, is only a prelim-
inary part of his duty under § 17 of this chapter, annually to
" make a report to the general court of his official transactions,"
in which he shall include among other things " an exhibit of the
financial condition and business transactions of the several in-
surance companies as disclosed by official examinations of the
same or by their annual statements, abstracts of which state-

ments, with his valuation of life policies, shall appear therein; and such other information and comments relative to insurance and the public interest therein, as he thinks proper." It is important in one other way. It naturally is used in part as a foundation for action, in case he is called upon under § 7 to revoke or suspend the certificates and authority granted to a foreign insurance company, because he is of opinion that it is "in an unsound condition," or "that its actual funds exclusive of its capital, . . . are less than its liabilities."

The complaint against the respondent is that in applying the rule of computation prescribed by the statute to a certain class of policies issued by the petitioner, he has made a mistake in holding that, for the purpose of ascertaining their reserve value, they are to be treated as being from their inception policies for life or for an endowment period, and not as policies for one year only, with an option in the assured to continue them in force at the end of the year without a further physical examination, and without an increase of premium on account of the greater age of the assured. It is not contended that he has acted in bad faith or has wilfully disobeyed the law. There is only a difference of opinion between the petitioner and the respondent as to the proper application of the rule prescribed by the statute, to the methods of the petitioner in insuring under this class of policies.

A preliminary question is whether the decision of the commissioner in a matter of this kind is subject to revision by this court on an application for a writ of mandamus. In various proceedings affecting foreign insurance companies the statute makes no provision for an appeal from his decision, but treats his conclusion as final. Particularly is this so in the valuation of policies and assets and the determination of the financial condition of foreign companies doing business in this Commonwealth. "Before granting certificates of authority to an insurance company to issue policies or make contracts of insurance the commissioner shall be satisfied, by such examination as he may make and such evidence as he may require, that such company is otherwise duly qualified under the laws of this commonwealth to transact business herein." R. L. c. 118, § 6. By the R. L. c. 120, § 10, he has absolute authority to give or withhold his in-

dorsement upon a requisition of the directors for the withdrawal of any portion of an emergency fund deposited by an assessment insurance company with the treasurer of the Commonwealth. Under R. L. c. 120, § 12, the authority granted to a foreign assessment insurance company to do business in this Commonwealth " shall be revoked if the insurance commissioner, on investigation, is satisfied that such corporation is not paying in full the maximum amount named in its policies, or that it has otherwise failed to comply with any provision of this chapter or its own contracts." In regard to the reduction of capital stock of an insurance company, it is provided by the R. L. c. 118, § 37, that, " If the commissioner finds that the reduction is made in conformity to law and that it will not be prejudicial to the public, he shall indorse his approval upon the certificate." By § 67 of this chapter, a company organized under the laws of another State may be admitted to do business in this Commonwealth, if, " in the opinion of the commissioner," it " is in sound financial condition," etc. Section 72 provides that, " No domestic life insurance company shall reinsure its risks except by permission of the insurance commissioner; but may reinsure not exceeding one-half of any individual risk." Under § 78 " No foreign insurance company shall be so admitted and authorized to do business until . . . it has satisfied the insurance commissioner " of numerous facts therein stated. The terms of each of these sections make it plain that the opinion and judgment of the insurance commissioner is to be final and conclusive in determining these important matters upon which the rights of the insurance companies and the protection of the public depend. Most, if not all of these several conclusions involve the consideration of questions of law as well as questions of fact.

In regard to the only important action depending upon the valuation of policies to ascertain the reserve liability of insurance companies, namely, the making of a report to the Legislature and the revocation or suspension of certificates of authority to do business, it seems that the judgment of the commissioner is not subject to revision. Under § 17, he is to make a report of the financial condition of insurance companies and of their transactions and the valuation of life policies, which must mean a report according to his understanding of the facts, founded on

examinations and statements.   By § 7 he is to revoke or suspend certificates of authority granted to a foreign insurance company if he "is of opinion upon examination or other evidence that a foreign insurance company is in an unsound condition, that it has failed to comply with the law, or that its actual funds exclusive of its capital, if it is a life insurance company, are less than its liabilities," etc. ; and no new business can thereafter be done by such company " until its authority to do business is restored by the commissioner."   If the "ground for revocation or suspension relates only to the financial condition or soundness of the company, or to a deficiency in its assets," there is no appeal from a decision of the commissioner.   In other cases the company may apply to the Supreme Judicial Court for a reversal of his decision.   Here again is an indication that the judgment of the commissioner in all matters of law or fact involved in determining the financial condition of a company for a purpose affecting it even to the extent of terminating its existence as an insurer in this Commonwealth, is to be final and conclusive.

The valuation of policies for the purpose of determining the reserve liability, is only one of the processes necessary to determine the company's financial condition.   It involves an application of the statutory rule to each policy, in connection with the methods and practices in the transaction of the business that exist, either as a part of the science of life insurance or otherwise, outside of the stipulations of the policy.   New forms of policies may be adopted which were not known when the statutory rule was established, and new questions may arise, depending in part upon the principles of life insurance as a science, and in part upon the practices of the company, as well as upon rules of law, in determining how the statutory rule shall apply to these policies.   In the present case, even if the contracts referred to are to be considered technically as the petitioner contends, the statute is silent as to whether the value of the option to continue the insurance at the end of the year without an examination, and at the premium fixed for an age a year younger than the assured would then have attained, is not to be considered in determining the reserve liability of the company under the contract.   Questions of fact and questions of law must be answered

in coming to a conclusion. In valuing all the assets of a company, which usually comprise investments of many kinds, such questions must inevitably arise. If we are to examine each policy or class of policies, together with the methods of the company in fixing their premiums, and any other facts pertaining to the policies which are different from those belonging to other kinds of policies, for the purpose of determining whether the insurance commissioner has made a mistake of law in valuing them, we know of no good reason why his valuation of each item of the assets might not be examined to see if it is affected by a mistake of law. A mistake of the latter kind might be as detrimental to the company as one of the former, whether viewed in reference to its effect upon the commissioner's report, or upon his determination to revoke or suspend the certificate of authority. If the commissioner's mistakes of law are to be corrected on an application for a writ of mandamus, his mistakes in the construction of contracts entering into investments should be dealt with, as well as his mistakes in the construction of contracts for insurance. We are of opinion that the statute does not contemplate a revision of the commissioner's decisions in this way. This officer is intrusted with the performance of important duties, and invested with power to use his discretion and judgment in matters which call for prompt and decisive action, and which it would be difficult to investigate in our courts. We are of opinion that at least so long as he acts in good faith, intending to obey the law, we cannot, by a writ of mandamus, compel him to change his conclusions either of law or fact in the valuation of the policies or assets of a life insurance company.

Without considering whether any mistake appears, we must deny the petitioner's application. Similar decisions have been made in regard to the powers of the insurance commissioner in Ohio and in Kansas. *State* v. *Moore,* 42 Ohio St. 103. *Dwelling-House Ins. Co.* v. *Wilder,* 40 Kans. 561.

*Petition dismissed.*