(174 App. Div. 23)

HOPKINS v. CONNECTICUT GENERAL LIFE INS. CO.

(Supreme Court, Appellate Division, First Department.    July 10, 1916.)

1. INSURANCE ⬉138(1), 140—REGULATION—APPROVAL OF POLICY—STATUTE.
   Under Laws 1913, c. 155, § 2, amending Insurance Law (Consol. Laws, c. 28) § 107, subd. (i), providing that a policy issued in violation of the section shall be valid, but the rights of the parties shall be governed by the provisions of the section, and subdivision (a), forbidding the issuance of an insurance policy, the form of which has not been filed with and approved by the superintendent of insurance, where defendant issued to plaintiff's intestate an insurance policy in the standard form, but containing a war rider which had not been filed or approved, the war rider was in violation of the statute, and will be discarded, and the policy is valid and enforceable in its standard form, which covered the risk exempted by the war rider.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 246-249, 252; Dec. Dig. ⬉138(1), 140.]

2. INSURANCE ⬉140—REGULATION—STATUTE—CONSTRUCTION.
   Laws 1913, c. 155, § 2, amending Insurance Law (Consol. Laws, c. 28) § 107, subd. (i), providing that a policy issued in violation of the section is valid, will be construed as provided in the section, that when any provision in such policy is in conflict with any provisions of the section the rights and duties of the parties shall be governed by the provisions of the section, and it is not limited in its application to the standard provisions mentioned in subdivisions (c), (d), and (e).
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 252; Dec. Dig. ⬉140.]

3. INSURANCE ⬉140—REGULATION—STATUTE—CONSTRUCTION.
   Laws 1913, c. 155, § 2, amending Insurance Laws (Consol. Laws, c. 28) § 107, subd. 1, providing a penalty for willful violation of its provisions does not provide the only penalty following a violation of the law of filing, or affect the interpretation of subdivision (i), providing that invalid provisions in policies shall be disregarded.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 252; Dec. Dig. ⬉140.]

4. INSURANCE ⬉142—ILLEGAL CONTRACTS.
   The signature of the insured could not make valid a provision of an insurance policy which did not comply with the law, and which was expressly forbidden by law under important considerations of public policy.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 263, 264; Dec. Dig. ⬉142.]

5. INSURANCE ⬉140—REGULATION—STATUTE—CONSTRUCTION.
   Under the provisions of Laws 1913, c. 155, § 2, amending Insurance Law (Consol. Laws, c. 28) § 107, providing for the approval of insurance policies by the insurance commissioner and that provisions not so approved shall be disregarded, the enforcement of only the valid provisions of a policy was not enforcement of a contract which the parties did not

make, since the insurer must have known that a war rider attached to the policy of deceased was invalid, because it had not been approved by the insurance commissioner.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 252; Dec. Dig. ⊂⟶140.]

Clarke, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by May Davies Hopkins against the Connecticut General Life Insurance Company. Judgment for defendant (158 N. Y. Supp. 79), and plaintiff appeals. Reversed, and judgment directed for plaintiff.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Warren C. Van Slyke, of New York City, for appellant.
George Coggill, of New York City, for respondent.

DAVIS, J. The defendant recovered a judgment against the plaintiff, dismissing the complaint, with costs. The case was tried without a jury, the parties having waived a jury trial.

[1] The action was brought upon an accident insurance policy issued to Albert L. Hopkins, which provided for the payment of $40,000 to his wife, the plaintiff, in the event of his death resulting from injuries insured against in the policy. Mr. Hopkins went down with the Lusitania, which concededly was destroyed by a German submarine. There was a so-called "war rider" attached to the policy when issued, and the defense, successfully urged at the trial, is based upon the validity of this rider. But for this war rider, the plaintiff concededly was entitled to a recovery, as all of the facts sustaining such recovery were admitted by the pleadings and the stipulation introduced in evidence on the trial, and have been found in the decision. There were two riders attached to the policy when it was delivered to Mr. Hopkins. The war rider was signed by Mr. Hopkins and is as follows:

"Rider to be Attached to and Form Part of Policy No. CF6674 Issued by the Connecticut General Life Insurance Company to Albert Lloyd Hopkins. In consideration of the issuance of the policy, I hereby agree for myself, my beneficiary, our respective executors, administrators, or assigns, that this policy does not cover any loss or disability resulting from bodily injuries caused directly or indirectly by any act of any of the belligerent nations engaged in the present European war.
"Dated this 29th day of April, A. D. 1915.
                    "Connecticut General Life Insurance Company,
                              "Wells, Potter, Fish & Ustick, Inc.,
                                   "By Frank H. Wells, Treasurer.
          "A. L. Hopkins, Insured."

No copy of the form of this war rider was filed with the superintendent of insurance or approved by him prior to the delivery of the policy to Mr. Hopkins. No copy of any form of policy containing the terms, provisions, and conditions of the war rider as a part thereof, was filed with or approved by the superintendent of insurance. Nor did the war rider bear the signature of any executive officer of the company. It was simply signed by a corporate agent, "Wells, Potter, Fish & Ustick, Inc." And no approval of said rider by an executive officer of the defendant was indorsed on the policy.

The plaintiff contends that the war rider was invalid, and of no force or effect, by reason of the defendant's failure to comply with the provisions of chapter 155 of the Laws of 1913, in making use of the rider, in that: (1) The defendant failed to file said rider with the superintendent of insurance, and have it approved by him, prior to the issuance and delivery of the policy. (2) The rider constituted a change in the policy, and as such it had to have the indorsed approval by an executive officer to validate it under the provisions of the statute, and the policy itself. (3) The rider was not "printed in bold-face type and with greater prominence than any other portion of the text of the policy," and as such there was a clear violation of paragraph (6) of subdivision (b) of section 107.

The trial court has found that the defendant failed to comply with this law in respect to the filing of the war rider, but that this violation did not invalidate the rider. The court also held that the rider did not effect any change in the policy because it was a part of the policy, having been annexed to it at the inception of the policy contract, and that therefore there was no necessity for the approval in writing of an executive officer of the company. There is no doubt that the rider in question was a part of the policy. It is made so by the terms of the policy itself. And there can be no doubt that in issuing this policy without having filed this form of war rider with the superintendent of insurance the defendant violated chapter 155 of the Laws of 1913, amending Insurance Law, § 107, subd. (a) part of which reads as follows:

"(a) On and after the first day of January, nineteen hundred and fourteen, no policy of insurance against loss or damage from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state by any corporation organized under article two of this chapter, or, if a foreign corporation, authorized to do business in this state, until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the superintendent of insurance."

The purpose of this statute was to carry out the public policy of the state to take control of the forms of insurance contracts and prevent insurance companies from issuing any form of policy not approved by the superintendent of insurance. That part of the policy which had been approved by the superintendent of insurance clearly covers a loss such as occurred in this case (see part A of the policy). The rider in question here cut down this risk, so as to exclude death by accident caused by any belligerent in the present war. In a very substantial particular it changed the form as approved by the state. The issuance of a policy in this form without the approval of the superintendent of insurance under subdivision A, supra, is absolutely forbidden. The trial court held that notwithstanding the law had been violated in issuing the policy, it was nevertheless a valid policy as to all its provisions, including the war rider.

[2] The defendant contends that even if the issuance of an unfiled and unapproved rider or policy be a violation of the act in question, such rider and policy are not thereby invalidated, but on the contrary are validated by subdivision (i) of section 107, which reads as follows:

"(i) A policy issued in violation of this section shall be held valid but shall be construed as provided in this section and when any provision in such a policy is in conflict with any provision of this section, the rights, duties and obligations of the insurer, the policy holder and the beneficiary shall be governed by the provisions of this section."

We think this contention is unsound. Without doubt, the purpose of this provision is to preserve the policy, but not to the extent of making valid those parts inserted therein without authority of law. Subdivision (i) declares that the policy shall be valid, and then lays down a rule for construing the policy and determining the rights, duties, and obligations of the parties. The policy must be construed according to the provisions of section 107, and if any provision of the policy is in conflict with the provisions of that section the provisions of the section must control. In the case at bar the war rider is obviously in conflict with subdivision (a) of section 107. It was issued unlawfully, and therefore the only parts of the policy which are valid under subdivision (i) are those which conform to the provisions of section 107; that is, every part of the policy except the war rider.

[3] The defendant claims that subdivision (i) of section 107 is limited in its application to changes in the standard provisions mentioned in subdivisions (c), (d), and (e) of section 107; but subdivision (i) does not so declare. On the contrary, it expressly refers to *any* provisions in the policy which are in conflict with *any* provision of section 107.

[4] The defendant contends also that the only penalty following a violation of the law of filing is found in subdivision (1) of section 107, which reads as follows:

"Any company, corporation, association, society or other insurer or any officer or agent thereof, which or who issues or delivers to any person in this state any policy in *willful* violation of the provisions of this section shall be punished by a fine of not more than five hundred dollars for each offense, and the superintendent of insurance may revoke the license of any company, corporation, association, society or other insurer of another state or country, or of the agent thereof, which or who *willfully* violates any provision of this section."

And in effect the trial court so held. There is nothing in this subdivision to support that view. Only in case the violation is *willful* does the punishment follow. The real and true interpretation of these subdivisions (i) and (1) is that if the policy is issued in violation of section 107, willfully or not, the illegal part of the policy must be discarded and the legal parts retained in full force, and if the illegal parts have been issued in willful disobedience of the law the party so issuing the policy may be punished under subdivision (1). When the Legislature made it a criminal offense to issue policies in willful violation of section 107, it thereby emphasized the importance which it attached to state control over the issuance of policies of insurance. The assured signed this rider, and if it is claimed that this made the rider legal, it is sufficient to say that the parties by their agreement could not make valid a provision of the policy which did not comply with the law, and which was expressly forbidden by law under important considerations of public policy.

We think, therefore, that the court below erred in dismissing this complaint.

[5] It may appear at first sight that the result of this conclusion is to allow the plaintiff to sue on a contract which neither party intended to make. The answer to this objection is that the company, when it issued the policy, must have known that the rider was issued contrary to law, and that under subdivision (i), supra, notwithstanding the invalid rider, the approved provisions of the policy constituted a good policy. In other words, the company issued its policy with full knowledge that the rider could not be enforced, but that the other valid parts could be enforced. Probably in its haste to issue this policy it took the chance of succeeding in limiting the scope of its risk by a rider which it knew to be invalid. There is a hernia rider attached to this policy. As to this rider the company complied with the law and with the terms of the policy. Its form had been filed and approved by the superintendent of insurance, and it being a change in the original form of the policy, it was signed, as the policy required, by an executive officer of the company.

The course pursued by the company in the case of the hernia rider should have been adopted in respect to the war rider, and, having failed to do so, the company can neither claim the benefit of the war rider, nor reject the valid parts of the policy.

The judgment dismissing the complaint is reversed with costs and judgment directed for the plaintiff with costs. Settle order on notice.

McLAUGHLIN, SCOTT, and DOWLING, JJ., concur.

CLARKE, P. J. I dissent, and vote to affirm, for the reasons stated by Mr. Justice Shearn at Trial Term.