## MUTUAL BENEFIT LIFE INS. CO. OF NEWARK, N. J., v. WELCH, Ins. Com'r.

No. 9346—Opinion Filed Dec. 24, 1917.

On Rehearing Sept. 17, 1918.

(175 Pac. 43.)

(Syllabus.)

**1. Insurance — Insurance Commissioner — Powers—Form of Life Insurance Policy.**

Under the provisions of the Constitution of this state, the Insurance Commissioner is an executive officer, whose official functions pertain alone to the execution of the laws of the state as affected by the principles of equity relating to insurance with no legislative power, but with such quasi judicial power as is essential to the performance of the executive duties of his office.

(a) He must quasi judicially determine, for example, whether a "form" of policy of life insurance filed with him as required by section 70, art. 1, c. 21, Laws 1909, p. 346 (section 3473, Rev. Laws 1910), violates any applicable state, or federal constitutional or statutory provision, or the common law, or any principle of equity which would disen-

title a party to the enforcement of its provisions.

(b) He can neither add anything to nor take anything from the measure of protection afforded the public by the applicable state and federal constitutional and statutory provisions. by the common law, and by the principles of equity, which must be his sole guide in determining whether he will disapprove such "form" of policy.

## 2. Injunction—Insurance—Form of Policy —Duties of Insurance Commissioner — "Form."

The word "form," as used in section 70, art. 1, c. 21, Laws 1909, p. 346 (section 3473 Rev. Laws 1910), refers to and means the entire formulatory policy contract which the insurer proposes to use in its business as such and includes both substance and structural make-up and arrangement in the element thereof to be considered by the Insurance Commissioner in his quasi judicial determination of the question as to whether he should disapprove the same.

(a) The Insurance Commissioner has the power and it is his duty to disapprove such "form" only if, in the exercise of his judgment, he concludes that the same violates some applicable state or federal constitutional or statutory provision, or the common law, or a principle of equity which would disentitle a party to its enforcement.

(b) The Insurance Commissioner will not be enjoined from disapproving such "form" merely because he may err in the exercise of his judgment in determining such question or unless it appears that, instead of exercising his judgment he will act arbitrarily or fraudulently in such disapproval.

## 3. Injunction—Petition—Sufficiency.

Where a petition, without setting out any portion of a proposed policy of life insurance except a "war rider" which provides that "if within five years from the date of this policy the insured shall engage in any military or naval service in time of war, the liability of the company in event of the death of the insured while so engaged, or within six months thereafter, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon, unless before engaging in such service, or within one month (of not less than thirty days), or at the time of paying the first premium due hereon, if the insured shall be then so engaged, the insured shall pay to the company at its home office in Newark, New Jersey, such extra annual premium or installment thereof as may be required by the company, and in like manner while the insured shall continue so engaged, shall pay with each regular premium as it falls due, such extra annual premium or installment thereof

as may be required by the company. Within one year after the termination of the war the company will return such portion of the extra premiums as in its judgment will not be required to cover the extra hazard"—alleges that the Insurance Commissioner, with whom a "form" of such policy has been filed, will. if not enjoined, wrongfully and without authority disapprove such policy for the sole reason that said "war rider" contains the words "or within six months thereafter," such petition is insufficient to show, as against a general demurrer, that such commissioner will act arbitrarily or fraudulently in doing so.

(a) The words, "or within six months thereafter," are inseparably related to. and derive elements of contractual character from, other provisions of said "rider," including the provision for an extra premium charge to prevent loss of value and contestability upon the grounds of such service, in terms that do not expressly disclose the basis for calculating the amount of extra premium that may be required, and that give the insurer arbitrary power to determine such amount, including the power to discriminate against partiotism and duty, if not qualified by construction, and the contractual character of these words may be affected by other provisions of the policy not shown by the petition.

(b) Such petition. to withstand such demurrer, should affirmatively show that the threatened disapproval will be arbitrary or fraudulent. in view of a full disclosure of all the facts affecting the question.

Owen and Miley, JJ., dissenting.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by the Mutual Benefit Life Insurance Company of Newark. N. J., a corporation, against A. L. Welch, Insurance Commissioner of the State of Oklahoma, to enjoin the latter from disapproving (under Laws 1909,: p 346, the same being section 3473, Rev. Laws 1910) a proposed "form" of policy of life insurance to be issued by the former in its business as an insurer in Oklahoma, Judgment for defendant upon sustention of his demurrer to plaintiff's petition and plaintiff brings error. Affirmed.

David Kay, Jr., and Embry, Crockett & Johnson, for plaintiff in error.

S. P. Freeling, Atty. Gen., R. E. Wood, Asst. Atty. Gen.; and T. J. McComb, for defendant in error.

THACKER, J. The plaintiff in error, as plaintiff in the trial court, filed its petition in that court, praying for an injunction against the latter to restrain him from dis-

approving, under Laws 1909, p. 346 (section 3473, Rev. Laws 1910,) a "form" of policy of life insurance which the former had duly filed with the latter, and proposes to use as an insurer soliciting business and issuing policies in Oklahoma, and also praying for a temporary restraining order, which was issued. The plaintiff alleges in its petition that the proposed "form" of contract with insurers in Oklahoma is in accord with all the laws of this state, especially section 67, art. 1, c. 21, Laws 1909, p, 342 (section 3470, Rev. Laws 1910), which provides that no policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless the same shall at least provide, in substance, among other things, as required by the third subdivision of this section, that the policy "shall be incontestable after two years from its date, except for nonpayment of premiums, and except all violations of the conditions of the policy relating to the naval or military service in time of war," That the said conditions of the proposed policy providing that the same is contestable for naval or military service in time of war are that "if, within five years from the date of this policy, the insured shall engage in any military or naval service in time of war, the liability of the company, in event of the death of the insured while so engaged, or within six months thereafter, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon, unless before engaging in such service, or within one month (of not less than thirty days), or at the time of paying the first premium due hereon, if the insured shall be then so engaged, the insured shall pay to the company at its home office in Newark, N. J., such extra annual premium or installment thereof as may be required by the company, and in like manner, while the insured shall continue so engaged, shall pay with each regular premium as it falls due such extra annual premium or installment thereof as may be required by the company. Within one year after the termination of the war the company will return such portion of the extra premiums as in its judgment will not be required to cover the extra hazard." That the "defendant threatens to and will, if not enjoined by the court, wrongfully and without authority, disapprove said "form" of policy for no other reason than that it does not revive to full value the policy on which extra premiums are not paid until the ex-

piration of six months after such military or naval service in time of war, which defendant has no right or authority to do;" that is, said defendant will disapprove said clause and provision, and all policies containing same, for no other reason than that it contains the words, "or within six months thereafter," in the clause: "If within five years from the date of this policy the insured shall engage in any military or naval service in time of war, the liability of the company, in event of the death of the insured while so engaged, or within six months thereafter, will be limited," etc. That such phrase and provision to which said commissioner objects is not merely a matter of "form" which may be determined by the said commissioner under his authority to disapprove "forms" of policies, but it is a matter of contract not prohibited by law, and which this plaintiff has a right to make with persons desiring insurance by this plaintiff and acceptable to it; and the power given the commissioner to disapprove "forms" of policies does not extend to the disapproval of such contractual provisions in a policy, nor to the disapproval of "forms" of policies because they contain such contractual provisions as the "war rider" above quoted; and that the plaintiff "has done and performed all conditions on its part entitling it to use such 'war rider,' and to issue and deliver life insurance policies in the state of Oklahoma continuing the same as a part thereof," but that it will be unable to do so unless the threatened disapproval of the defendant is enjoined.

The defendant filed a general demurrer to the plaintiff's petition, which, in legal effect, admits, for the purpose of a decision upon the question thereby presented, that the proposed policy is in accord with all the requirements of section 67, art. 1, c. 21, Laws 1909, p. 342 (section 3470, Rev. Laws 1910), and does not violate, nor propose to violate, any provision of sections 43, 54, 56, 57, 65, 68 art. 1, c. 21, Laws 1909, pp. 333-347 (sections 3446, 3457, 3459, 3460, 3468, 3471, Rev. Laws 1910), nor any law or public policy of this state, nor any principle of equity, except by the use of the words "or within six months thereafter" in the above-quoted condition of the policy relating to the naval or military service in time of war, so as to exempt the plaintiff from liability in the event of the death of the insured not only while engaged in the naval or military service in time of war, but for the period of "six months thereafter," if the insured engage in such service within five years from

the date of the policy, unless the insured shall pay such extra premium as may be required by the plaintiff on account of the extra risk or hazard involved in such service.

The trial court sustained the defendant's demurrer to the plaintiff's petition, and the plaintiff, electing to stand upon the same, brings the case here for review upon the question as to whether the Insurance Commissioner may not be enjoined from disapproving its proposed "form" of policy because of the "six months thereafter" provision therein.

It may be here observed that the exception of "all violations of the conditions of the policy relating to the naval or military service in time of war" in the above-quoted third subdivision of section 67, art. 1, c. 21, Laws 1909, p. 342 (section 3470, Rev. Laws 1910), from the statutory requirement that the policy shall provide in substance that the same "shall be incontestable after two years from its date," etc., leaves insurance companies and persons desiring to be insured with complete freedom of contract in respect to such "naval or military service in time of war"; that is, leaves such companies and such persons free to determine whether they will enter into a contract that such service shall render the policies absolutely or only qualifiedly contestable or not contestable at all, and thus free to provide for the forfeiture, or to prevent the revival of any or only a part of the value of the policy for all time or for a specified period, as may be stated in the contract, unless the insured comply with the conditions as to extra premium if any are named in such policy, etc., subject, however, to the necessary implication that the policy contract in this regard must not violate any federal or state law, including the common law, nor any principle of equity, of which the courts of this jurisdiction take cognizance. The common law, of course, forbids, among other things, any "form" of policy of life insurance which violates the public policy in any respect.

Sections 1, 22, 23, art. 6, section 44, art. 9, and section 1, art 19 (Williams, §§ 150, 171, 172, 261, 340) of our Constitution, considered in view of article 5 (Williams, §§ 51-149) of the same, create, define, and limit the powers and duties of the Insurance Commissioner so as to make it clear that his sole official functions are in the execution of the laws of this state, including, of course, not only all constitutional and valid statutory enactments, but the federal and state laws of every character, and the principles of equity of which the courts of this jurisdiction take cognizance relating to insurance and insurance companies doing business in the state, and looking to the protection of the public against such violations. He has no legislative power; but since he must construe and apply the laws of the state, and in doing so must necessarily exercise discretion and judgment, and in determining and applying the constitutional and statutory provisions, and applying the pertinent common-law and equity principles, he has quasi judicial power in determining whether a proposed policy contract violates any law or principle of equity cognizable in this state. Aetna Life Ins. Co. v. Hardison Travelers' Ins. Co., 199 Mass. 181, 85 N. E. 407; Provident Savings Life Assurance Co. of New York v. Cutting, 181 Mass. 261, 63 N. E 433, 92 Am. St. Rep. 415; North British & Mercantile Co. v. Craig, 106 Tenn. 621, 62 S. W. 155; Am. Casualty Ins. & Security Co. v. Fyler, 60 Conn. 448, 22 Atl. 494, 25 Am. St. Rep. 337; Palache v. Pac. Ins. Co., 42 Cal. 418; Dwelling House Ins. Co. v. Wilder, 40 Kan. 561, 20 Pac. 265; State ex rel. Ins. Co. v. Moore, 42 Ohio St. 103.

The statutes of this state relating to the subject of insurance and the duties of the Insurance Commissioner are, among other things designed to protect the public against all violation of law, and to secure honesty and fair dealing in the conduct of the business of insurers in contracting for and taking risks or hazards in this state (State ex rel. M. R. L. Ins. Co. v. Revelle, 260 Mo. 112, 168 S. W. 697; North British & Mercantile Co. v. Craig, 106 Tenn. 621, 62 S. W. 155; State ex rel. Ins. Co. v. Moore, 42 Ohio St. 103; Hopkins v. Conn. Gen. Life Ins. Co., 174 App. Div. 23, 160 N. Y. Supp. 247, as well as ability and promptness in the performance of their contracts in case of the destruction, loss, or injury against which they insure (articles 1-6, c. 21, Laws 1909, pp. 312-381 [sections 3402-3580, Rev. L. 1910]).

Among other things, as a prerequisite to the admission of a foreign insurance company to do business in this state, "it shall satisfy the Insurance Commissioner that it is fully and legally organized under the laws of its state or government to do the business it proposes to transact in this state." Second subdivision, § 18, art. 1, c. 21, Laws 1909, p. 321 (section 3421, Rev. Laws 1910), and section 70, art. 1, c. 21

Laws 1909, p. 346 (section 3473, Rev. Laws 1910), reads:

"No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state until the form of the same has been filed with the Insurance Commissioner; and after the Insurance Commissioner shall have notified any company of his disapproval of any form, it shall be unlawful for such company to issue any policy in the form so disapproved."

The word "form" as used in this section of the statutes, refers to and means the entire formulatory policy contract, with all of its contractual provisions, as well as its general make-up and arrangement in respect to being readable and understandable, and with its necessary or appropriate blanks or spaces for the insertion of such particulars only as omitted names of insured and signatures of parties, amount of insurance and of premium charged therefor, date of contract, etc., suitable for general use in the conduct of the business of the insurer in soliciting and entering into contracts of insurance as required by the written and the unwritten law, and by the principles of equity, for the protection of the public on the one hand and the demarcation of the privileges of foreign insurers on the other; and this word "form", therefore, includes both substance and structural make-up and arrangement in the elements of the policy contract to be considered by the Insurance Commissioner in his quasi judicial determination of the question as to whether he should disapprove the same after it has been filed with him. Ætna Life Ins. Co. v. Hardison, 199 Mass. 181, 85 N. E. 407; Hopkins v. Conn. Gen. Life Ins. Co., 174 App. Div. 23, 160 N. Y. Supp. 247. Also see Black's Law Dictionary; The Oxford Dictionary: Webster's New International Dictionary.

A "form" not easily read nor easily understood, and likely to mislead in any respect, by reason of faulty structural make-up or arrangement, would, of course, be violative of the policy of the law looking to the protection of the public against fraud, deception, and mistake in such contracts; and the defects of this character, as well as those going to the substance of the contract, for which the Insurance Commissioner may disapprove a "form," are defects violative of law or of some principle of equity.

When, but not until, an insurance company has, as required by the above-quoted section of our statutes, filed a formulatory policy contract which is in accord with the applicable laws, constitutional, statutory, and common, enforceable in this jurisdiction, and against which relief is not obtainable under the principles of equity of which the courts of this jurisdiction take cognizance, it is authorized to do business here, without the affirmative approval of the Insurance Commissioner, although it can have the services of no agent here until it has complied with the provision of section 25, art. 1, c. 21, Laws 1909, p. 325 (section 3429, Rev. Laws 1910), and obtained the agent's license for which provision is therein made; but the above-quoted section of the statutes, relating to the formulatory policy contract to be filed with the Insurance Commissioner, contemplates and authorizes this officer to disapprove such contract whenever he may determine, in the exercise of his quasi judicial power, that it is violative of any applicable law, written or unwritten, or any principle of equity, of which the courts of this state take cognizance, and, in effect, provides that if he has notified any company of his disapproval of such contract it shall be conclusively unlawful for such company to issue any policy in the "form" so disapproved, without regard to whether his disapproving decision is correct or erroneous, provided he did not act arbitrarily or fraudulently in the same.

He will be enjoined from disapproving such formulatory policy contract only when it affirmatively appears that he will act arbitrarily or fraudulently in doing so. Dunham v. Ardery, 43 Okla. 619, 143 Pac. 331, L. R. A. 1915B, 233, Ann. Cas. 1916A, 1148; Norris v. Cross, Sec. of State, 24 Okla. 287, 15 Pac. 1000; Welch, Ins. Com., v. Maryland Cas. Co., 47 Okla. 293, 147 Pac. 1046, L. R. A. 1915E, 708.

The scope of the question of the qualifications of an insurer to do business in this state may be so broad as to be dependent upon many considerations. The common law, among other things, forbids a contract that is violative of public policy, so the Insurance Commissioner may disapprove for that reason; and equity, in a proper case, will prevent enforcement or grant relief from a contract, as, for instance, a provision for a forfeiture of a policy if the insured fail to comply with certain conditions subsequent therein provided, as was done in the cases of the New York Life Ins. Co. v. Statham and Same v. Seyms, and the Manhattan Life Ins. Co. v. Buck. 93 U. S. 24, 23 L. Ed. 789, so the Insurance Commissioner may, if the facts warrant, disapprove because of a provision so harsh that equity

*would* grant relief against it.

In this connection it may be observed that the "war rider" in question reduces the value of the policy in case of death within the specified time to a return of the premiums, etc., if the insured engage in any military or naval service in time of war and does not pay the extra premium demanded by the insurer, without regard to whether he unnecessarily does so or engages in such service in obedience to a public necessity or the express requirement of the laws of his country; and in terms that do not expressly disclose the basis for calculating the amount and would give the insurer arbitrary power, including the power to discriminate against patriotism and duty, if not qualified by construction, this "rider" permits the insurer to determine the amount of such extra premiums; and the "within six months thereafter" provision of the "war rider" is inseparably related to, and derives elements of character from these other provisions of the "rider."

As, in cases of such violation of the common law or the principles of equity as well as in cases of violation of the express terms of constitutional or statutory provisions, the Insurance Commissioner may disapprove the "form" that has been filed with him, it will be seen that he necessarily has a large field for the exercise of judgment.

As already stated in effect, his threatened decision will not be disturbed by injunction merely because a court does not agree with him (State ex rel. Ins. Co. v. Moore, supra, and other authorities hereinbefore cited), nor unless such decision will be arbitrary or fraudulent, as it is clear that he has power to decide whether such "form" violates any law or any principle of equity.

To be arbitrary, his decision must be based alone upon his will, and not upon any course of reasoning and exercise of judgment in determining whether the "form" violates any law or principle of equity (C. of G. Ry. Co. v. Mote, 131 Ga. 166, 62 S. E. 164; City of Louisville v. Gagen, 132 Ky. 502, 116 S. W. 745, rehearing denied in 118 S.W. 947); and the petition in the instant case does not so clearly allege or show that the Insurance Commissioner will act either arbitrarily or fraudulently as to justify the equitable relief now demanded. It does allege that he will act wrongfully and without authority; but this is not equivalent to an allegation that he will act arbitrarily or fraudulently. It does allege that he will disapprove the formulary policy contract

filed with him because it contains the words "or within six months thereafter" as hereinbefore shown and for no other reason; but in view of the necessary relation of these words to other provisions of the "war rider," and their possible relation to provisions of the policy not shown by the petition nor otherwise before this court (Richmond Mica Co. v. De Clyne [C. C.] 90 Fed. 661; Harms v. Stern [D. C.] 222 Fed. 581; Payne v. Ramsey, Sheriff, 30 Okla. 356, 120 Pac. 595; Lawton v. Stevens, 32 Okla. 476, 122 Pac. 940; City of Woodward v. Raynor, 29 Okla. 493, 119 Pac. 964; Maythorn v. Palmer, 11-1 Jur. N. S. 230, 11 L. T. Rep. N. S. 261, 13 Weekly Rept. 37), we are not quite prepared to say that it has been shown that the Insurance Commissioner will act either arbitrarily or fraudulently in disapproving the policy because of this "war-rider" provision.

If the Insurance Commissioner's proposed decision and action will, in any respect, be outside of his official sphere as herein defined, he will no doubt correct the same to accord with this definition; and if he finds himself in error in the exercise of his judgment within his proper sphere, there is yet time within which he may correct such error; but the principal question here is, Has he power to decide at all? As we think he has the power to decide and act within his sphere as defined in this opinion, and the petition to enjoin his proposed action does not allege facts sufficient to show that he will go beyond his sphere in doing so, it does not appear that the trial court erred in sustaining the demurrer to such petition.

In view of this conclusion, it is unnecessary to consider undisputed statements of fact and arguments thereon in the brief for the Insurance Commissioner which seem to be beyond the precise question raised by the defendant's demurrer to the plaintiff's petition. For the reasons stated, the decree of the trial court sustaining the defendant's demurrer is affirmed.

All the Justices concurring. except TURNER, J., not announcing, and OWEN and MILEY, JJ., dissenting.

### On Rehearing.

RAINEY, J. On rehearing we adhere to the conclusions formerly reached in this case, but, for fear that some of the expressions in the opinion are susceptible of a construction not intended by the court, we wish to say that, under the law defining the powers and duties of the Insurance Commissioner, that said commissioner is vested with

a large and wide discretion. This discretion, however, is not unlimited, but is as fixed by the law itself. The law fixes the sphere within which he may act, and the Legislature may and in this case doubtless has given him a very wide discretion within that sphere, and so long as he acts within the discretion so vested in him by the law he will not be controlled by mandamus or injunction. Although in the first instance the Insurance Commissioner has the right and it is his duty to construe the law in determining the sphere within which he has a right to act, yet it is at last and ultimately the duty of the courts to say whether he has acted within the limits of the powers so conferred on him by the law. The correct rule, we think, is announced in the case of North British & Mercantile Co. v. Craig, 106 Tenn. 621, 62 S. W. 155, which case is cited with approval in the original opinion. We especially approve the following language of the court:

"But it must always be remembered that the public functionary of the class under consideration can act independently of the courts only to the extent that the law gives him that power. The law is the source of his authority, and he has no discretion beyond that conferred. All of his acts must be within the limits of that authority, and of this the courts must finally judge. Though he may undoubtedly and in every instance construe the law for himself as to discretionary matters actually within the law, he cannot by interpretation, however conclusive to his own mind, bring within his discretion any matter that is not in fact so placed by the law when rightly interpreted by the courts. His domain is prescribed by the law, and within that domain the discretion given him is beyond the control of the courts; however, it is the province of the courts to determine the limits of that domain, and keep him within its real bounds, and to construe the law and define the limits of his authority in all proper cases.

"Then it is the province of this court, and not that of the Insurance Commissioner, to determine finally whether or not the action proposed by him, in the present instance, is within the scope of his authority. The act gives him extensive power of revocation. That power is in a large degree discretionary, and hence beyond extraneous control; but it is not unlimited."

Although, in our opinion, the question is very close, it would seem that section 70, art. 1, c. 21, Laws 1909 (section 3473, Rev. Laws 1910), confers upon the Insurance Commissioner the authority to determine whether the form of policy presented is in violation of the law, and the commissioner,

in disapproving the form of policy submitted to him by the plaintiff in error, was acting within the bounds of his discretion vested in him by the legislative enactment, and therefore within the scope of his authority. But within this limit the commissioner is not authorized to act arbitrarily or to abuse the discretion he is permitted to exercise, nor can he go beyond the limits of his authority or discretion as conferred upon him determined by the courts and in such cases, by the law. Whether he has done this must ultimately, and when properly presented, be determined by the courts and in such cases, if he has acted within the scope of his authority or discretion, the relief will be denied; but where he has acted without the scope of his authority, and beyond the bounds within which he is permitted to act, the courts will not hesitate to award relief to the party aggrieved by his action.

HARDY, KANE, BRETT, TURNER, and TISINGER, JJ., concur.