# JULIA THORNE AND MARY E. DYER v. THE AETNA LIFE INSURANCE COMPANY.[1]

April 27, 1923.

No. 23,315.

**Pneumonia resulted from accident.**

1. The evidence set out in the opinion was sufficient to warrant the jury in finding that an attack of pneumonia which caused the death of the insured resulted from bodily injuries effected by external, violent and accidental means. It also showed that the insured did not abandon his regular occupation after he took out a policy of accident insurance, but was following two occupations when he was insured and continuously thereafter, one specified and the other not specified in the policy.

**Provision in insurance policy invalid because not printed as required by statute.**

2. The policy provided that there should be a reduced indemnity if the insured was injured while doing an act not pertaining to the occupation stated in the policy but to one classified by the company as more hazardous. This provision was not printed in bold-face type and with greater prominence than other portions of the policy as required by section 3523, G. S. 1913, and hence no effect can be given to it. The policy must be read as though it did not contain the provision at all.

**Construction of statute.**

3. The purpose of section 3530, G. S. 1913, is to preserve the policy, but not to the extent of making valid those parts which are inserted therein without authority of law.

Action in the district court for Dakota county to recover $10,000 on defendant's accident insurance policy. The case was tried before Converse, J., who when plaintiff rested denied defendant's motion to dismiss the complaint and the proceedings, because the evidence was insufficient to show that the death of insured resulted directly from bodily injuries, solely through external violence and accidental

[1] Reported in 193 N. W. 463.

means, and at the close of the testimony denied its motion for a directed verdict, and a jury which returned a verdict for plaintiffs. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.   Affirmed.

*Moore, Oppenheimer, Peterson & Dickson,* for appellant.

*Albert Schaller* and *Kueffner & Marks,* for respondents.

LEES, C.

Appeal from the denial of defendant's motion in the alternative for judgment or a new trial of an action brought on a policy of accident insurance made payable to plaintiffs in case of the death of the insured, who was their brother.  It was stipulated in the policy that plaintiffs were to receive $10,000 if the insured lost his life as the result of bodily injuries effected solely through external, violent and accidental means.   The insured died February 9, 1921.   The cause of death was lobar pneumonia.   The complaint alleged that he sustained accidental injuries on February 2, 1921, from which death resulted.  This was denied in the answer.  The issue was submitted to a jury and determined in plaintiffs' favor.

1. The insured lived with his sisters at Hastings in this state. For some time prior to February 2, 1921, he was employed as an attendant at the State Asylum for the Insane at Hastings.   His hours of work were from 10 p. m. to 6 a. m.   He was in the habit of walking from his home to the asylum in the evening and back in the morning.   There was evidence tending to establish the following state of facts:   On February 1 at about 9:30 p. m. the insured left home to go to the asylum.  He appeared to be in his usual state of health.   Plaintiffs next saw him at about 8:30 a. m. on February 2.   He was then unconscious and was lying on the porch at the door of his house.   His clothing had been torn open and was soiled and his collar had been torn off.   There were bruises on his chest, a puncture in one of his elbows, and his watch and pocketbook were gone.   He never regained a sufficient degree of consciousness to tell what happened.   A physician was called, who found him in a profound chill, his breathing and pulse very rapid, and his condition so serious that he was removed to a hospital, where he died 7

days later. His physician was of the opinion that when he first saw him he was in the early stages of pneumonia, brought on by exposure following his bodily injuries. Other physicians expressed the opinion that pneumonia was caused by the injuries followed by exposure and a condition of reduced vitality.

The insured was on duty at the asylum until 6 a. m. on February 2. When he left at that hour he was properly dressed and appeared to be in his usual state of health. He was seen by a neighbor on the street near his home a short time before his sisters found him. He was not walking in his usual manner. His head was down and his appearance indicated that something was wrong.

During his last night at the asylum, the insured told another attendant that he was not feeling well. A physician testifying for defendant gave it as his opinion that the injuries suffered by the insured were too slight to cause the attack of pneumonia and that there had been a sudden and violent onset of the disease before he was injured. Several theories are advanced to account for the injuries, but we think it was not important that the jury should be able to determine how they were inflicted. It might fairly be inferred that they were violent and accidental and were received at a time when the insured was not suffering from the disease which took his life. The vital question is—were such injuries the direct cause of the attack of pneumonia? We are of the opinion that the jury might find that they were. White v. Standard Life & A. Ins. Co. 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; Ludwig v. Preferred A. Ins. Co. of N. Y. 113 Minn. 510, 130 N. W. 5; Ashelby v. Travelers Ins. Co. 131 Minn. 144, 145, 154 N. W. 946; Frommelt v. Travelers Ins. Co. 150 Minn. 66, 184 N. W. 565.

2. The policy stated that by occupation the insured was a newspaper reporter. A clause in the policy reads thus:

"This policy includes the endorsements and attached papers if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the Company as more hazardous

than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties. about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation."

The same language is found in section 3 (B):-1, chapter 156, p. 182, Laws 1913 (section 3524, G. S. 1913).

The answer alleged that after the policy was issued the insured changed his occupation by becoming an employe of the state at the insane asylum; that, if he was injured, it was in the course of this employment, which was classified as an ordinary risk with liability limited in case of death to $2,000. To establish this defense, defendant offered in evidence a copy of its book classifying risks, filed with the commissioner of insurance November 23, 1919. Plaintiffs objected and the book was excluded. The greater portion of the argument is directed to the point that there was prejudicial error in this ruling.

The policy took effect November 18, 1918. The employment at the asylum began March 1, 1918, and was continuous thereafter. For a long time prior to March 1 the insured had been a newspaper reporter at Hastings. He never gave up that occupation. After his night's work at the asylum was over, he devoted a portion of each day to gathering news for the associated press and for newspapers published in Dakota county and in St. Paul and Minneapolis. There cannot be nor is there any dispute about these facts. Evidently the answer was framed on the supposition that after taking out the policy the insured ceased to be a reporter and that thereafter his sole occupation was that of an attendant at the asylum, but such was not the fact. Instead of changing his occupation, he engaged in an additional occupation. After March 1, 1918, he followed both, the old one in the daytime and the new one at night. There never was an abandonment of one occupation for another, and it is not clear that the first provision of the above quoted clause is

applicable. The second provision more nearly fits the facts in the case.

If it is conceded that the insured was injured while doing an act having no relation to newspaper reporting, it does not follow that the promised death benefit of $10,000 is cut down to $2,000. The insured was injured after he left the asylum and before he reached home. His duties at the asylum ended when he left to go home. Thereafter, he was doing nothing which pertained to attendance on patients in the asylum. The situation was not different than it would have been if he had been going home from a newspaper office. There are risks incident to attending patients in an insane asylum which might increase the likelihood of accidental injury, but in walking home the insured was exposed only to such risks as were common to all persons going about on the roads and streets in Hastings. Such risks did not grow out of his employment at the asylum or directly pertain to it, and hence it is extremely doubtful whether the situation is the same as though the injuries he sustained had been inflicted upon him by a patient in the asylum. The reasoning of the court in Zantow v. Old Line Accident Ins. Co. 104 Neb. 655, 178 N. W. 507, is persuasive and, if followed, it leads to the conclusion that the promised indemnity should not be reduced. It has been held that the character of the occupation to which the act pertains, and not the character of the act itself, determines the extent of liability. Ebeling v. Bankers' Casualty Co. 61 Mont. 58, 201 Pac. 284, 22 A. L. R. 777. Granting that this should be the test, we doubt whether it can be said that in walking home on a road or street the insured was doing an act which pertained peculiarly to the occupation of a hospital attendant as distinguished from a score of other occupations classified as less hazardous. Be this as it may, there is a more conclusive reason for holding that the stipulated indemnity should not be cut down. Subdivision 6, § 2, chapter 156, p. 181, Laws 1913 (section 3523, G. S. 1913), reads thus:

"No such policy shall be issued or delivered  *  *  *  unless the exceptions of the policy be printed with the same prominence as the

benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy."

It is conceded that no portion of the clause first quoted was so printed. A wilful violation of the provisions of chapter 156 is made punishable by fine and the revocation of the insurer's license to do business in this state. Section 13, chapter 156, p. 190, Laws 1913 (section 3534, G. S. 1913). If there was a violation in the failure to print the clause in bold-face type, the provisions thereof cannot be given effect.

Chapter 156, Laws 1913, constitutes a complete code regulating accident insurance. Aaberg v. Minn. Com. Men's Assn. 143 Minn. 354, 173 N. W. 708. In enacting it, Minnesota, in common with other states, adopted the recommendations of the National Association of Insurance Commissioners respecting the form and substance of policies of health and accident insurance. See Williams v. Travelers Ins. Co. 168 Wis. 456, 169 N. W. 609, 959, called to our attention with other recent cases by counsel for defendant with commendable fairness, although they are opposed to the views expressed in their brief. It had been the practice of accident insurance companies, prior to the enactment of the statute, to insert in their policies so-called limited liability provisions, many of which had been before the court. 4 Cooley, Briefs on Ins. p. 3303; 7 Cooley, p. 1359, et seq. The statute does not deprive such companies of the right to insert provisions in their policies which limit liability or reduce the amount of the promised indemnity. But, if they do so, attention must be called to the fact that under stated circumstances the promised indemnity will be reduced, and this must be done by printing any provision which has that effect in the manner prescribed by the statute. The claim here is that the indemnity is reduced because the injury was sustained while the insured was fol-

lowing an occupation classed as more hazardous than that stated in the policy, or while he was doing an act pertaining to the more hazardous occupation. But notice of the fact that there might be such a reduction was not given by printing the provision having that effect in bold-face type.

In Tracey v. Standard Acc. Ins. Co. 119 Me. 131, 109 Atl. 490, 9 A. R. L. 521, speaking of a provision similar to subdivision 6, § 2, chapter 156, p. 181, the court said the purpose of the legislature was to require any exception contained in the policy to be so conspicuously printed that it will attract the attention of the insured so that he would at least be put upon inquiry as to what, under the exception, he is to do or not to do in order to preserve the integrity of his indemnity and prevent a diminution thereof which is to him the sole object of his contract. And in Williams v. Travelers Ins. Co. supra, the court said that a policy containing a clause which has the effect of reducing the stipulated indemnity, but which is not printed as prescribed by statute, is to be read as though the clause were not in the policy at all. We think this is sound doctrine and that our statute should receive a similar construction, and accordingly hold that the clause in question cannot be given the effect claimed for it by defendant and that plaintiffs are entitled to recover the full amount of the insurance.

3. Referring to section 9, chapter 156, p. 189, Laws 1913 (section 3530, G. S. 1913), defendant contends that if it is held that the reduced liability provision is of no effect, nevertheless the rights and obligations of the parties are governed by the act which contains the identical language we have quoted from the policy, and hence the amount which may be recovered must be cut down under the terms of the act itself. A similar contention was made in Hopkins v. Connecticut Gen. Life Ins. Co. 174 App. Div. 23, 160 N. Y. Supp. 247, but was not sustained, the court saying that the purpose of this provision of the statute is to preserve the policy, but not to the extent of making valid those parts which are inserted therein without authority of law. This was also the view of the court in Williams v. Travelers Ins. Co. supra, and it seems to us to be the only

reasonable one when we consider the evident intent of the legislature in enacting the statute.

Order affirmed.