Williams, Appellant, vs. Travelers Insurance Company, Respondent.

*November 11, 1918—February 4, 1919.*

*Accident insurance: Statutory regulation of contract: Typography of policy: Invalidity of provision therein: Approval of policy form by insurance commissioner: Collateral attack.*

1. When a statute declares, as the public policy of the state, that contracts relating to a particular subject (in this case insurance against accidents) shall be in certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties, such statute is controlling as against any contract the parties may attempt to make varying therefrom.

2. Where an accident insurance company issued a policy which did not comply with the requirements of clause (6), sub. 2, sec. 1960, Stats., that any portion of the policy "which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy," no such reduction of the indemnity can be made by the company under a provision of the policy not printed as above stated. The provision not printed as prescribed, although it is a standard provision in the form found under clause (B):—1 of sub. 3 (1), sec. 1960, is, under sub. 9, sec. 1960, to be treated as though it were not in the policy at all.

3. Where failure in such a case to comply with the statutory requirement appears, without doubt or question, from the policy itself, the fact that the policy form had been approved by the insurance commissioner does not preclude an attack upon it and upon such decision of the commissioner, in an action upon the policy by a beneficiary. *Lundberg v. Interstate B. M. A. Asso.* 162 Wis. 474, limited.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Reversed.*

The defendant insurance company issued its "Special Accumulative Accident Policy," form ED 9229, to the plaintiff April 14, 1915, describing him in such policy as being under a preferred classification and by occupation "buying and

selling of real estate, office duties and traveling only," and providing, in case of total disability, for a weekly indemnity of $25. The policy was renewed at the expiration of the first year and was in force October 5, 1916, the time of the injury.

The plaintiff lived in the city of Madison and had an office at Cameron, Wisconsin. He was engaged in selling lands in that neighborhood. On October 4th he came with a man named Quinn, whom he had theretofore engaged for that purpose, to clear a certain tract of land belonging to plaintiff's wife and which he then contemplated selling. The clearing was to be done by the use of dynamite, and a quantity of it for that purpose was taken by plaintiff and Quinn to the land, a short distance away from the store where the dynamite was purchased, on the morning of that day. During the day plaintiff was about the land where Quinn was working a portion of the time, but he did not use or assist in using any of the dynamite. He spent his time in piling up and setting fire to some of the stumps that had been exploded by Quinn. The plaintiff contemplated leaving early the following morning, but on missing the train found it necessary to spend the following day, October 5th, at the same place. In the forenoon of the 5th he carried about twelve and one-half pounds of dynamite from the store a mile or so distant to the place where Quinn was working on the land, and for Quinn's use. During the forenoon plaintiff used two small pieces of dynamite, about one fourth of a pound each, in exploding under the extended roots of some stumps with a view of seeing, as he testified, if in that manner the work could not be done more economically than in the manner in which it was being done by Quinn. He became satisfied, after two such experiments, that there was no advantage in the method that had so appealed to him. Later in the forenoon Quinn went to the store to obtain an additional quantity of dynamite. During his absence plaintiff saw a stump so situated that he thought of trying one

more experiment upon it with a half stick of dynamite, by packing the same under the roots with clay and then exploding it. Several futile efforts were made by him to explode it after it had been so packed, and then in some manner there was an explosion, the result of which was such injury to his eye and ear that no question was raised by defendant but that there was a total disability therefrom such as would meet the language of the total disability clause in the policy entitling him to $25 per week, unless the amount must be lessened under the other conditions of the policy.

In November, 1910, defendant filed with the insurance commissioner a solicitor's accident manual dated in February, 1909, and several small supplements to it were filed at various times thereafter. The manual contained a provision in substance that if an insured was injured in an occupation classified as more hazardous than that specified in the policy the insurance would not be forfeited, but would be reduced to such an amount as the premium paid would have purchased under the rates for such increased hazard. In a long table therein, under the heading "Classification of Risks," were the following: "Dynamite maker, handler, user, or custodian of—Extra special hazardous, limit of risk $500." Also, "Real-estate agent or broker, buying and selling timber lands, ordinary, limit of risk $3,000;" "Real-estate agent or broker, preferred, limit of risk $5,000."

On December 19, 1913, a form of the policy in suit here, together with nine other different forms, were sent by defendant to the insurance commissioner for approval and they were approved on the same date. The letter of approval from the commissioner as to this particular form, after describing it, says as follows: "Is approved for use after January 1, 1914, until otherwise ordered."

In February, 1914, the insurance commissioner, writing his approval of another form of defendant's policy, said as follows: "Permit me to observe that I think the first paragraph of the first of the standard provisions should be

printed in bold-face type so there may be no question but that it conforms with subdivision (6), subsection (2), section 1960, Wisconsin Statutes (standard provisions law)." And again in the following month, in writing as to another such form of policy, the commissioner calls the defendant's attention to the fact that he had heretofore suggested the printing of the first of the standard provisions in bold-face type, adding, "I do not assert that it is necessary that this paragraph be printed in bold-face type; I merely suggest that the failure so to print it can result in loss only to the company."

A jury was waived and there was a trial by the court, which made its findings. The ones material for consideration here are as follows:

"2. That prior to the issuance of said policy the commissioner of insurance of Wisconsin had approved the form of policy so issued and the defendant company had filed with said commissioner its classification of risks as required by section 1960 of the Statutes of Wisconsin.

"3. That plaintiff was subsequently injured by the discharge of dynamite while he was using such dynamite to remove stumps from land owned by his wife; that when so injured plaintiff was doing an act or thing pertaining to an occupation classified by the insurer as more hazardous than that of buying and selling real estate."

The defendant requested the court to make findings providing in substance that the plaintiff was not injured while performing ordinary duties about his residence nor while engaged in recreation; and that when injured he was doing an act or thing pertaining to the occupation classified by defendant as "Dynamite maker, handler, user, or custodian of," and that the premium paid would have purchased but one sixth of the indemnities and benefits under the occupation first above mentioned. The trial court ruled upon such proposed finding as follows: "Refused as immaterial, because each of the requests is established by the evidence without dispute."

The court directed judgment for the sum of $223.81, being one sixth of the amount to which plaintiff would have been entitled if under the rate of $25 per week. From the judgment entered thereupon plaintiff appeals.

For the appellant there was a brief by *Riley & Ohm* of Madison, and oral argument by *M. C. Riley* and *H. F. Ohm.*

For the respondent there was a brief by *Olin, Butler, Stebbins & Stroud* of Madison, and oral argument by *B. H. Stebbins* and by *W. A. Foley* of Milwaukee.

The following opinion was filed December 3, 1918:

Eschweiler, J. By ch. 601, Laws 1913, what is now sec. 1960, Stats., providing for a standard accident and health policy, was adopted. This statute is the same in form and substance as was recommended by the National Association of Insurance Commissioners of this country in the same year and was adopted in almost the identical form in New York, Connecticut, Minnesota, New Hampshire, North Carolina, and Pennsylvania in 1913, and by Illinois in 1915.

Portions of the statute are as follows:

"Section 1960. 1. On and after the first day of January, 1914, no policy of insurance against loss or damage from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the commissioner of insurance; nor shall it be so issued or delivered until the expiration of thirty days after it has been so filed unless the said commissioner shall sooner give his written approval thereto. If the said commissioner shall notify, in writing, the company, corporation, association, society or other insurer which has filed such form that it does not comply with the requirements of law, specifying the reasons for his opinion, it shall be unlawful thereafter for any such insurer to issue any policy in such form.

"2. No such policy shall be issued or delivered . . . (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, pro-

vided, however, that any portion of said policy *which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy"* (italics ours).

"3. Every such policy so issued shall contain certain standard provisions, which shall be in the words and in the order hereinafter set forth and be preceded in every policy by the caption 'Standard Provisions.' . . ."

"(1) A standard provision relative to the contract which may be in either of the following two forms: Form (A) to be used in policies which do not provide for reduction of indemnity on account of change of occupation, and Form (B) to be used in policies which do so provide."

In the same subsection, after provisions as to what must appear in Form (A), appears in a clause relative to Form (B) (being the form in question in suit) the following so-called standard provision, which appears also verbatim under the heading "Standard Provisions" on the second page of the policy and reads as follows:

"1. This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the insurer's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the insurer as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the insurer will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the insurer for such more hazardous occupation."

Sub. 13, sec. 1960, provides a penalty by way of fine or the revocation of the license of any company, officer, or agent thereof who issues or delivers in this state any policy in wilful violation of the provisions of the act.

When the legislature declares, as it has by this section in question, the public policy of the state to be that that which had theretofore been subject to contract between the parties shall hereafter be by certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties thereto, the statutory provisions step in and control and regulate the mutual rights and obligations rather than the provisions of any contract the parties may attempt to make varying therefrom. *Temple v. Niagara F. Ins. Co.* 109 Wis. 372, 85 N. W. 361; *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295; *Whitfield v. Ætna L. Ins. Co.* 205 U. S. 489, 27 Sup. Ct. 578; *Verducci v. Casualty Co.* 96 Ohio St. 260, 117 N. E. 235.

The defendant seeks to reduce the amount it must pay for the injury from the primary rate of $25 per week by virtue of the clause of the standard provisions, found under clause (B) :—(1) of sub. 3 (1), sec. 1960, which we have quoted, either because when injured plaintiff had changed his occupation to one more hazardous, or because when injured he was doing an act or thing pertaining to a more hazardous occupation than that under which he was classified by the policy, the latter being the one adopted by the trial court.

The policy in suit is before us in the record and shows upon its face, absolutely and without any room for question or debate, that the clause relied upon is not printed in bold-face type and is not printed with greater prominence than any other portion of the text of the policy. The provisions of clause (6), sub. 2, sec. 1960, above quoted and italicized, meet the exact condition confronting defendant in this case, where it now seeks, by virtue of the circumstances under which this injury occurred, to reduce the indemnity. Under and by virtue of that clause (6) the defendant was required to print the clause now relied upon by it in bold-face type and with greater prominence than any other portion of the text of the policy, because that portion of the policy so relied upon purports, by reason of the circumstances under

which a loss is incurred, to reduce the indemnity promised under ordinary circumstances.

In presenting this partial defense by way of reduction from the stipulated indemnity defendant must rely upon the policy it issued. That document, when produced and examined, shows for itself that the defendant has, in issuing the same, violated the express provision of the law as to the manner and form in which such a defensive clause shall be printed. It thus appearing by its own document that it has, as to the clause in question, placed itself outside the pale of the law, it cannot, in a suit such as here, be permitted to take advantage of any such clause.

The defensive clause not appearing in the policy in manner and form as required by statute, it is as though it were not there at all. This, in our judgment, is the necessary and reasonable effect to be given sub. 9 of this sec. 1960, which reads as follows:

"9. A policy issued in violation of this act shall be held valid but shall be construed as provided in this act and when any provision in such policy is in conflict with any provision of this act the rights, duties and obligations of the insurer, the policy-holder and the beneficiary shall be governed by the provisions of this act."

If it does not so apply in such a situation as we have before us, then it seems superfluous. So applied, it gives life to the provisions of the statute which so evidently require that greater publicity be given in the policy to the clauses under which the insurer may expect to lessen its payments than to the provisions under which the insured may have hoped and believed his indemnity was fixed. It will undoubtedly emphasize the warning given on this very point by the insurance commissioner in his letters to defendant after the approval of the form of this policy and which letters are quoted from in the statement of facts above, and it may preserve these salutary provisions from lapsing into a state of innocuous desuetude.

It is contended, however, by defendant that such a position ought not to be maintained, inasmuch as from the undisputed evidence and as found by the trial court this form of policy known as ED 9229 was approved by the commissioner of insurance December 19, 1913, and that such approval thereupon became absolute and made such form of policy immune from any collateral attack or question, as to whether or not there was a compliance with the statute, by any beneficiary or policy-holder in a suit for benefits claimed under such policy, and that such was the holding of this court in *Lundberg v. Interstate B. M. A. Asso.* 162 Wis. 474, 156 N. W. 482, and that by that decision such rule is *stare decisis.* Furthermore, that in any event this particular policy is to be read and construed as though the views expressed in that case were a part of the contract between the parties.

In the *Lundberg Case* the issues were submitted to the trial court upon stipulation and without the taking of testimony. In the stipulation the defendant contended that the policy there in question showed for itself that it was in typographical make-up in accordance with the same clause (6), sub. 2, above quoted and here involved, and that that was purely a question of law for the court. The trial court held by his finding that such question was determinable by an examination of the printed portions of the policy by the court and that the provision in question there was in accord with and met the provisions of the law. On the appeal this court concurred in that conclusion reached by the lower court by that finding (p. 480). In the *Lundberg Case,* therefore, the fact was determined by the court from an inspection of the policy itself that there was a compliance with the statute. In this case, and beyond doubt or question, the policy in suit shows for itself a fact exactly contrary to the fact found and shown by the policy itself in the *Lundberg Case.*

While the *Lundberg Case,* upon the facts there presented,

was correctly decided, yet we are now constrained to hold that certain language there used to the effect (p. 479) that after approval by the commissioner of a form of policy presented to him under sec. 1960, then, in a suit like this upon the policy by a beneficiary, there cannot be a collateral attack permitted upon such approval, went too far and must be now deemed withdrawn.

The disposition we thus make of this case, in holding that defendant's failure to comply with the statute prevents it from asserting its partial defense, makes it unnecessary to pass upon the other points presented in the very able brief and argument of appellant's counsel.

The plaintiff is entitled to the full indemnity of $25 per week from the time of the accident to the commencement of this suit, and judgment to that effect should have been entered.

*By the Court.*—Judgment of the circuit court reversed, with directions to enter judgment in accordance herewith.

The following opinion was filed December 6, 1918:

WINSLOW, C. J. *(concurring)*. I understand that it is held by the opinion of the court in this case, *first,* that where, as in the *Lundberg Case,* a question of fact is presented as to whether the policy in question conforms typographically to the requirements of the statute, the decision of the commissioner on that question is final and cannot be collaterally attacked; and, *second,* that where, as in the present case, there is no question of fact, but simply a plain violation of the command of the statute, the approval of the form by the commissioner does not help the form in the least, but it may be attacked in any court in which it comes in question for its failure to comply with the plain commands of the law.

The result is that (as applied to the facts then present) the rule stated in the *Lundberg Case* was right and is ap-

proved, but that it should not be extended to a case like the present where there is. no question of fact to be passed upon.

With this understanding of the effect of the present decision I concur in the reversal.

ROSENBERRY, J. I concur in the views of the Chief Justice.

A motion for a rehearing was denied, with $25 costs, on February 4, 1919.