**MUTUAL LIFE INS. CO. OF NEW YORK v. SCHENKAT.**

**No. 4752.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 19, 1932.

Bert Vandervelde, of Milwaukee, Wis. (Miller, Mack & Fairchild, of Milwaukee, Wis., of counsel), for appellant.

W. G. Evenson, of Baraboo, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

Plaintiff (appellee here) brought this suit to recover on a double indemnity policy on the life of Otto Schenkat. The portion of the policy in so far as it is important here is printed as it appears in the policy:

## "THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK WILL PAY

.......................................... Dollars to the payee of the face amount of Life Insurance Policy No. ............... in connection with which this Double Indemnity Policy is issued, upon receipt of due proof that the death of the Insured under said Life Insurance Policy resulted from bodily injury effected solely through external, violent, and accidental means, and occurred within ninety days after such injury, all upon the conditions set forth in the paragraph entitled "Conditions".

"Conditions. This Double Indemnity Policy will be payable upon receipt of due proof that, while said Life Insurance Policy and this Double Indemnity Policy are in full force (and, if said Life Insurance Policy be a policy of Endowment Insurance, before the end of the endowment period or, if said Life Insurance Policy be a Yearly Renewable Term Policy, before the termination date), said Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that this Double Indemnity Policy shall not be payable if death resulted from self-destruction, whether sane or insane, or from

military or naval service in time of war, or from any act attributable to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity."

The facts were stipulated by the parties and are as follows: The double indemnity policy, which is printed in full on pages 26, 27, and 28 of the printed record, was issued by the appellant on June 23, 1928, on the life of Otto Schenkat, and was in full force and effect on the date of the injury and death of the insured, Otto Schenkat. The full premium had been paid on the policy. It was issued in the state of Wisconsin. The contract of insurance is subject to the statutes of Wisconsin and the laws of the state governing its construction, force, and effect, and the rights of the parties thereto.

Otto Schenkat, the insured, came to his death August 2, 1931, by reason of having taken by mistake a quantity of sodium fluoride, a violent poison, without any intent on his part of doing himself harm or injury, but in the mistaken belief that he was taking a harmless remedy—epsom salts.

His death resulted solely by reason of the absorption of such poison into his system and the destruction of blood cells.

After having taken the sodium fluoride, he became violently ill, was nauseated, perspired freely, vomited blood; his lips and tongue were swollen; he became pale, and later his body discolored and showed marked paralysis. His abdomen was rigid, he suffered great pain, and died within three hours after having taken sodium fluoride.

The policy of insurance sued on was approved by the commissioner of insurance of the state of Wisconsin on April 5, 1927.

The double indemnity policy provided for the payment of the stipulated sum upon proof that the insured died as a direct result of bodily injury, of which there is evidence by a visible contusion or wound on the exterior of the body.

At the conclusion of the trial, each of the parties moved for a directed verdict. The court directed a verdict for plaintiff and entered judgment on the verdict, and this is assigned as error.

Two questions are presented: First, the effect of the Wisconsin statute, which is as follows:

Section 204.31 (2): "No such policy shall be so issued or delivered * * * (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-faced type and with greater prominence than any other portion of the text of the policy."

Section 204.31 (9): "A policy issued in violation of this act shall be held valid but shall be construed as provided in this act and when any provision in such policy is in conflict with any provision of this act the rights, duties and obligations of the insurer, the policyholder and the beneficiary shall be governed by the provisions of this act."

The most cursory examination of the part of the policy providing for double indemnity makes it apparent at once that the provisions of this statute were violated by appellant. To argue that they are "conditions" instead of "exceptions" is merely an evasion.

The Supreme Court of Wisconsin, in the case of Williams v. Travelers' Ins. Co., 168 Wis. 456, 169 N. W. 609, 611, 959, has construed this provision of the Wisconsin law:

"The defensive clause not appearing in the policy in manner and form as required by statute, it is as though it were not there at all. This, in our judgment, is the necessary and reasonable effect to be given subsection 9 of this section 1960 [204.31], which reads as follows: * * *

"If it does not so apply in such a situation as we have before us, then it seems superfluous. So applied, it gives life to the provisions of the statute which so evidently require that greater publicity be given in the policy to the clauses under which the insurer may expect to lessen its payments than to the provisions under which the insured may have hoped and believed his indemnity was fixed."

Counsel for appellant calls attention to the fact that in the case of Lundberg v. Interstate B. M. Acc. Ass'n, 162 Wis. 474, 156 N. W. 482, Ann. Cas. 1916D, 667, it was held that, after the approval by the commissioner of the policy presented to him under section 1960, then in a suit like this upon a policy of the beneficiary there cannot be a collateral attack.

In Williams v. Travelers' Ins. Co., supra, it is said that the opinion in the Lundberg

Case went too far and was modified, and as stated on page 465 of 168 Wis., 169 N. W. 609, 612: "Went too far, and must be now deemed withdrawn." Under this authority appellant cannot avail itself of the defense it has urged because it has violated this provision of the Wisconsin statute.

■ Second. We hold plaintiff was entitled to recover under the admitted facts in this case, even though the Wisconsin statute had been complied with by appellant.

The insured died as a "direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes." As an evidence of this the policy required, "and of which * * * there is evidence by a visible contusion or wound on the exterior of the body." We hold that this evidence was present.

From the brief statement of fact, after insured had through accident taken the poison from which he died, the stipulation of fact recites, "that death resulted solely by reason of the absorption of such poison into the system, and the destruction of blood cells;" that the poison produced these effects: Insured became violently ill; was nauseated; perspired freely; vomited blood; lips and tongue swollen; became pale; body discolored; marked paralysis; abdomen rigid; suffered great pain; and died three hours after the accidental taking of the sodium fluoride, a violent poison.

The word "contusion" and the word "wound" have both been given various definitions. Illustrative of this is Thompson v. Loyal Prot. Ass'n, 167 Mich. 31, 132 N. W. 554, 557, where the court instructed the jury as follows:

"'In legal medicine the word "wounds" means injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations, etc. In law the word means any lesion of the body.' * * *

"The policy distinguishes between contusions and wounds, and includes both. The definition of 'wounds' given by the court was a correct one. It is authorized by 4 Cooley's Bfs. on Law of Insurance, p. 3185; Black's Law Dic. p. 1245; Bouvier's Law Dic. [p. 1247]; State v. Owen, 5 N. C. 452, 4 Am. Dec. 571. The jury has been charged explicitly, in substance, that it must appear that the death was caused, alone and independent of other causes, by a bodily injury sustained through external violence and accidental means, leaving upon the body marks of contusion, or wounds, visible to the naked eye. The third paragraph excepted to explains and defines to the jury the meaning of the term 'visible mark' and the word 'wounds,' as used in the insurance contract. There was no error committed in such instruction."

Illustrative on the same question are: Robinson v. Mason. Prot. Ass'n, 87 Vt. 138, 88 A. 531, 47 L. R. A. (N. S.) 924; Barry v. U. S. Mut. Acc. Ass'n, 23 F. 712 (C. C. E. D. Wis.); Horsfall v. Pac. Ins. Co., 32 Wash. 132, 72 P. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846; Masonic Mut. Acc. Co. v. Campbell, 156 Ark. 109, 245 S. W. 307; Menneiley v. Employers' Liability Assur. Corp., 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716; Feis v. U. S. Ins. Co., 112 Neb. 777, 201 N. W. 558, 39 A. L. R. 1008.

Appellee has raised some question with reference to the pleading. The point is not well taken, and, in view of the opinion expressed, it is unnecessary to enter into a discussion of this question.

Affirmed.