# FIDELITY MUT. LIFE INS. CO. v. POWELL.

## No. 3738.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

Forrest Bramble, of Baltimore, Md. (F. Leonard Wailes, of Salisbury, Md., and Randolph Barton, Jr., of Baltimore, Md., on the brief), for appellant.

F. W. C. Webb, of Salisbury, Md. (Woodcock & Webb, Carroll E. Bounds, and William W. Travers, all of Salisbury, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by an insurance company from a judgment in favor of plaintiff in an action on the double indemnity feature of a life insurance policy. In the view which we take of the case, the only assignment of error which we need consider is that based on defendant's prayer for a directed verdict, and this resolves itself into a question as to the coverage of the double indemnity provisions of the policy and the proof required thereunder. Those provisions of the policy are as follows:

"Section 7. Double death benefit.

"Upon receipt, at its head office, of this policy duly discharged and of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, of which (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body, and that such death occurred within sixty days after sustaining such injury, the company will pay, instead of the death benefit, a double death benefit, to wit Ten Thousand Dollars.

"The double death benefit will not be allowed if there be in force paid-up or extended term insurance under section 3 of this policy; or if the insured's death result from self-destruction, whether the insured be sane or insane; from any violation of law by the insured; from military or naval service in time of war; from a state of war or insurrection; from engaging, as a passenger or otherwise, in aeronautic or submarine operations; from physical or mental infirmity; or directly or indirectly from illness or disease of any kind. The company shall have the right and opportunity to examine the body, and to make an autopsy, unless prohibited by law.

"The premium recorded on the face of this policy includes an extra of $6.75, being the annual premium for the double death benefit."

Defendant in its pleadings denied that the death of insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means, of which there was a visible contusion or wound on the exterior of the body, or that any proof to that effect had been received at the head office of the company, and averred that the death of insured "was not caused by drowning nor were external injuries revealed by autopsy." Upon the trial defendant admitted that the death of insured was due to carbon monoxide asphyxiation, and there was proof that this resulted from external, violent, and accidental means within the meaning of the policy. There was no proof, however, that any autopsy was ever held, or that there was any visible wound or contusion upon the exterior of the body, except a slight bruise upon the head, which was not shown to have had any connection with the injury causing death. The learned judge below was of opinion that the admission of defendant on the trial that the death was caused by carbon monoxide asphyxiation was admission of death from internal injury, and that no proof that such injury was revealed by autopsy was necessary to bring the case within the exception to the requirement of a visible wound or contusion upon the exterior of the body. In this we think there was error.

It will be noted that the policy does not cover all cases of death from external, violent, and accidental means. With the exception of the cases embraced in the parenthesis (drowning or internal injuries revealed by autopsy), it covers such cases only where there is injury "of which there is a visible contusion or wound on the exterior of the body." This is a not unusual provision in accident policies. 1 C. J. 433; Cooley's Briefs on Insurance (2d Ed.) vol. 6, p. 5316. And it is well settled that, under such a provision, the burden rests upon the claimant to prove, not merely that death resulted from external, violent, and accidental means, but also that the injury resulting in death was evidenced by such external contusion or wound. And, even though death from external, violent, and accidental means be shown, recovery will be denied, if there be not proof also as to such external contusion or wound. Paist v. Aetna Life Ins. Co. (D. C.) 54 F.(2d) 393, affirmed (C. C. A. 3) 60 F.(2d) 476; Mutual Life Ins. Co. v. Schenkat (C. C. A. 7th) 62 F.(2d) 236; Bahre v. Travelers' Protective Ass'n of America, 211 Ky. 435, 277 S. W. 467; 1 C. J. 433; Cooley's Briefs on Insurance (2d Ed.) vol. 6, p. 5316.

Since there was no evidence tending to show that the injury causing the death of insured, carbon monoxide asphyxiation, was evidenced by any visible contusion or wound on the exterior of the body, it is manifest that plaintiff cannot recover on the policy unless she can bring herself within the exception embodied in the parenthesis, i. e., unless she can show a case of drowning "or of internal injuries revealed by an autopsy." It is perfectly clear that she has shown neither. We can take judicial notice of the fact that carbon monoxide asphyxiation results in internal injuries, and that such internal injuries are revealable by autopsy; but in the case of this insured they were not "revealed by an autopsy." This is what is required, in language as plain as any of which our English speech is capable, to take the case out of the requirement of proof of a visible wound or contusion on the exterior of the body. The learned counsel for appellee in their supplemental brief have suggested that the language should be construed to mean "disputed internal injuries revealed by autopsy"; but it would be necessary to interpolate even more than this and to construe the exception as though it read "internal injuries which, if they are disputed, shall be revealed by an autopsy." To give the language either of the suggested interpretations, however, would be to make a different contract for the parties in the light of what we think they ought to have meant, not to construe the perfectly clear language that they have used.

It will not do to say that proof of internal injuries revealed by autopsy is dispensed with because of the admission on trial that death resulted from internal injuries. To do so is simply to read the words "re-

vealed by an autopsy" out of the policy; and we have no power to thus modify contracts which parties have made. There is sound reason for the requirement that internal injuries, to constitute ground of recovery, shall be revealed by autopsy. In case of injuries of which there is a visible wound or contusion on the exterior of the body, or in case of drowning, the cause of death is readily apparent; but in case of internal injuries it is largely a matter of opinion. As said in the Encyclopedia Brittanica (14th Ed.) vol. 2, p. 790: "In the absence of autopsy a diagnosis of the cause of death is in large measure an opinion as distinguished from a fact. Even a physician of the highest skill often finds in the post mortem room that his diagnosis of the patient's disease during life needs rectification." Such a requirement is a safeguard against fraud and mistake; and, where the parties have thus provided that the policy shall cover accidental death from internal injuries revealed only in this particular way, it does not cover death resulting from internal injuries not so revealed, no matter how indisputably established. The question is not merely one of proof, but of policy coverage; and the coverage is certainly not extended by an admission that death resulted from a cause which the policy did not cover.

■ But it is a condition of recovery under the double indemnity clause, not merely that in case of death from internal injuries same shall be revealed by autopsy, but also that proof to that effect be received at the home office of the company. There is no contention that this condition was complied with; and it is well settled that failure to comply with a condition of this character will defeat recovery under the policy. One of the latest cases dealing with failure to furnish proof required as a condition precedent to liability is Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416. In that case one of the terms of the policy was that disability benefits would be paid, and payment of further premium by insured would be waived, if the company were furnished with proofs of total and permanent disability. The insured became totally and permanently disabled, but proofs were not furnished the company. The Supreme Court, in affirming a judgment for the company said: "Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy. Compare Brams v. New York Life Ins. Co., 299 Pa. 11, 14, 148 A. 855. It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. v. Hurni Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Insurance Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings."

■ The admission on the trial that insured's death resulted from a cause which could be judicially noticed as an internal injury, not only could not extend the coverage of the policy, but could not amount to a waiver of the proof of injury required as a condition precedent to recovery. There was admission that the death of insured was the result of internal injury, but no admission that this internal injury was revealed by autopsy or that proof of death showing death from internal injury revealed by autopsy had been furnished the company. An admission of a fact on trial could have no greater effect than undisputed proof of such fact; and, if undisputed proof of such a fact as loss or cause of death dispenses with the necessity of the proof required by the policy as condition precedent to recovery, the whole unbroken line of decisions holding that such proof is necessary must be overruled. For cases holding that compliance with such a condition is a condition precedent to recovery, see Bennett v. Cosmopolitan Fire Ins. Co. (C. C. A. 5th) 50 F.(2d) 1017; Clements v. Preferred Acc. Ins. Co. (C. C. A. 8th) 41 F.(2d) 470, 76 A. L. R. 17; St. Louis Architectural Iron Co. v. New Amsterdam Casualty Co. (C. C. A. 8th) 40 F.(2d) 344; Harris v. North British, etc., Ins. Co. (C. C. A. 5th) 30 F. (2d) 94; Alliance Ins. Co. v. Enders (C. C. A. 9th) 293 F. 485. In the Bergholm Case, no question was raised in the decision of the Supreme Court as to the showing that insured was totally and permanently disabled within the provision of the policy while it was in effect; but recovery was denied be-

cause proof was not furnished as the policy required.

█ The contention that, if the company desired an autopsy, it should have demanded one under the provision of the policy giving it that right, is without force. That provision furnished additional protection to the company in the event of a dispute as to the cause of death in a case covered by the policy; but it did not enlarge the coverage of the policy so as to embrace death from internal injuries not revealed by autopsy, nor did it dispense with the proof required as a condition precedent to recovery.

For the reasons stated, we think that verdict should have been directed for defendant, and the judgment appealed from will accordingly be reversed.

Reversed.

SOPER, Circuit Judge (dissenting).

This action at law, first filed in the circuit court of Wicomico county, Md., and later removed to the federal court on the ground of diversity of citizenship, was brought by the beneficiary of a life insurance policy to recover the double benefit payable in case of the death of the insured resulting solely from exterior, violent, and accidental means. At the trial in the District Court, it was proved that the insured was seen approaching his garage at 6 o'clock on the morning of January 19, 1933, and, less than two hours later, was found dead inside the garage, lying on his back by the side of his automobile. The headlights of the car were burning, the left front tire was flat, and the tire and rim had been removed from the wheel which was elevated on a jack. The door was closed, and the garage was filled with smoke and fumes. The wind was from such a direction that it would blow the door to, if it were not fastened back. The company paid the single indemnity provided by the policy, but contested its liability for double indemnity.

At the trial, the defendant conceded that death was due to carbon monoxide asphyxiation, and the jury was instructed that such a death results from external and violent means. The issue as to whether the death was also the result of accidental means, or, as the company contended, was suicidal, or so recklessly brought about as not to be accidental within the meaning of the policy, was submitted to the jury, and a verdict was found for the plaintiff. There is no complaint that the court's instructions on this point were wrong. The appeal rests upon the contention that the company's prayer for a directed verdict in its favor should have been granted because the plaintiff failed to show sufficient facts in other respects to bring the case within the double indemnity feature of the contract. By the policy, the company agreed to pay $5,000 upon the death of the insured, "or, subject to the terms and conditions of Section 7, a double death benefit, to wit, Ten Thousand Dollars, provided the death of the insured result solely from external, violent and accidental means. * * *" "Section 7. Double Death Benefit. Upon receipt, at its Head Office, of this policy duly discharged and of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, of which (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body; and that such death occurred within sixty days after sustaining such injury, the company will pay, instead of the death benefit, a double death benefit, to wit: Ten Thousand Dollars."

The appellant points out that there was no evidence to show either a visible contusion or wound on the exterior of the body or internal injuries revealed by an autopsy, and therefore contends that proof of death from bodily injury, effected solely through external, violent, and accidental means, was not furnished within the meaning of the policy. A small bruise was found upon the forehead of the deceased, but it was so insignificant that the District Judge instructed the jury that it had no bearing on the case and did not tend to prove that death was caused as contemplated by the double indemnity clause, and so the appellant has no complaint in this respect. But the District Judge held, in view of the concession that death was caused by carbon monoxide asphyxiation, that the omission to perform an autopsy revealing internal injuries was immaterial; and this holding furnishes the only substantial ground for the appeal.

It is insisted that the policy was not intended to cover death from external, violent, and accidental means in the case of internal injuries, unless they should be revealed by an autopsy, and that the burden of presenting this proof was upon the plaintiff, and, without it, the suit must fail. It was held in Paist v. Aetna Life Ins. Co. (C. C. A.) 60 F.(2d) 476, that a death from sunstroke did not fall within the terms of a policy which provided for double indemnity in case of external, vio-

lent, and accidental death, if the accident should be evidenced by a visible contusion or wound on the exterior of the body. The court said that the parties had agreed that the accident, against which the insured was indemnified, should be evidenced by such a contusion or wound; that these words are of well-known and commonly understood meaning, and did not describe a flushed and sunburned face accompanying the stroke. Adhering to the same principle, it was held in Mutual Life Ins. Co. of N. Y. v. Schenkat (C. C. A.) 62 F.(2d) 236, that the insured was covered by a similar policy, when death from accidental poisoning occurred, for it was thought that the requirement of a visible contusion or wound was satisfied in the swelling of lips and tongue, the pallor of the insured, and the subsequent discoloration and paralysis of the body which attended the poisoning. See, also, Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416, and Bahre v. Travelers' Protective Ass'n, 211 Ky. 435, 277 S. W. 467, which applied the rule that the parties have the right to place in their contract such limitations as they desire; and, when these are clear and unambiguous, the court must give them effect according to their meaning and intent.

The ruling of the District Judge was nevertheless correct, that the revelation of internal injuries by an autopsy was not essential to recovery. Obviously the primary purpose of the double indemnity clause was to insure the payment of double benefits in case of death from external, violent, and accidental means. That is shown by the clause quoted from the policy. Still it must not be overlooked that this clause is expressly subject to the conditions of section 7, and they include the relevant provision that, if death results from internal injuries, they must be revealed by an autopsy. It would seem to be the purpose of this provision to protect the company from fraud or mistake; or it may be, as the appellant in effect contends, that the double indemnity clause does not cover any death from internal injuries, unless they leave some visible mark within the body discoverable by an autopsy. In such an uncertainty, it is the duty of the court to adopt the construction most favorable to the insured. Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408. But there is no need to invoke this rule, for in either alternative the concession of the company puts an end to its de-

fense. There is no room for fraud or mistake as to the cause of death when the company admits that it was caused by carbon monoxide asphyxiation; and, for the same reason, there is no lack of definite proof of internal injuries evidencing the cause from which the insured died. Standard medical authorities, of which we are at liberty to take judicial notice, agree that, when a person dies from carbon monoxide asphyxiation, marked physical changes take place within the body. The blood, and consequently all the organs, assume a bright cherry red color due to the affinity and consequent combination of carbon monoxide with the hemoglobin in the blood, which prevents the hemoglobin from performing its normal function of taking up the oxygen in the blood as it passes through the lungs, and giving it off to the tissues of the body as the blood circulates through them. See MacCullum on Pathology and Webster on Legal Medicine and Toxicology. It is true, literally speaking, that these manifestations have not been revealed in this case by an autopsy, but no purpose, which the parties to the contract could possibly have had in mind, would be served by such a revelation. The concession that the insured died from carbon monoxide asphyxiation includes the admission that an autopsy would have disclosed the indubitable marks of such a death on the inside of the body. To say that in such a case recovery must be denied because the language of the policy has not been completely fulfilled is to quench the spirit of the document.

There is no failure, in the conclusion reached, to recognize the binding effect of a clear and unambiguous contract. The distinguishing feature of the pending case is the concession of the insurer which goes to the very heart of the controversy. It is not reasonable to suppose that the parties intended that the insurer should have the right to refuse payment of double indemnity, merely because an autopsy had not been performed, although the insurer should be completely satisfied from the proof, not only that death had been caused by external, violent, and accidental means, but also that, if an autopsy should be performed, internal injuries, which ordinarily accompany such a death, would be revealed. The purposes of the parties, rather than the literal significance of the terms of the policy detached from the realities of the situation, should govern the interpretation of the contract.